CLERK'S OFFICE U.S. DISTRICT COURT AT
ROANOKE, VA
FILED
8/26/2025
LAURA A. AUSTIN, CLERK
BY: s/C. Kemp
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| 7-ELEVEN, INC., | ) |
| Plaintiff, | ) Case No. 7:24-cv-00448 |
| v. | ) **MEMORANDUM OPINION** |
| SISARA, LLC, *et al.*, | ) By: Hon. Thomas T. Cullen |
| | ) United States District Judge |
| Defendants. | ) |

Plaintiff 7-Eleven, Inc. ("7-Eleven") brought this action against Defendants Sisara LLC ("Sisara"), Ram Kumar Lamichhane, and Sanu Maya Lamichhane (collectively, "Defendants") for breach of their franchise agreement, trademark infringement, and unfair competition. Sisara failed to appear by counsel[1] or otherwise timely respond to 7-Eleven's claims. As a result, 7-Eleven moved for entry of default against Sisara, which the clerk granted. (*See* ECF No. 29.) This matter is now before the court on 7-Eleven's motion for default judgment.[2] (Mot. for Default J. [ECF No. 36].) For the reasons discussed below, the court will grant the motion for default judgment against Sisara.

---

[1] Ram Lamichhane appears to be the only member of Sisara (*see* Compl. ¶ 3 [ECF No. 1]), and he initially sought to appear *pro se* on his behalf and on behalf of Sisara. The court advised him, however, that because Sisara is a business entity, it "may not appear in these proceedings without counsel." (Order, Aug. 6, 2024 [ECF No. 17].) No attorney ever noted an appearance on Sisara's behalf.

[2] On June 23, 2025, 7-Eleven filed a Suggestion of Bankruptcy as to Ram and Sanu Lamichhane. Thereafter, under 11 U.S.C. § 362(a)(1), the court stayed the proceedings as to those two defendants. That stay does not extend to the remaining defendant, Sisara. *See Credit All. Corp. v. Williams*, 851 F.2d 119, 121 (4th Cir. 1988) ("Congress knew how to extend the automatic stay to non-bankrupt parties when it intended to do so. . . . A reading of § 362 restricting a creditor's ability to proceed against its guarantor would eliminate the protection of assured creditors contemplated by the Bankruptcy Code."); *CresCom Bank v. Terry*, 499 B.R. 494, 496 (D.S.C. 2013) (noting that the "automatic stay provision [found at 11 U.S.C. 362(a)] applies to judicial proceedings and enforcement of judgments against only the debtor, not third[-]party defendants or co-defendants"). Accordingly, 7-Eleven's motion for default judgment is currently proceeding only against Sisara.

## I.     FACTUAL BACKGROUND

On August 13, 2021, 7-Eleven and Sisara entered into a franchise agreement, ancillary agreements, and addenda (collectively, the "Franchise Agreement") for the operation of a 7-Eleven Store located at 3202 Peters Creek Road in Roanoke, Virginia 24019 (the "Store"). (Compl. ¶ 23.) As part of the Franchise Agreement, Ram Lamichhane, as the owner of Sisara, executed and signed a Principals' Guaranty Agreement (the "Guaranty") under which he personally guaranteed the prompt payment and performance of all of Sisara's obligations to 7-Eleven. (Compl. ¶ 24.) 7-Eleven also agreed to finance a portion of the franchise fee, and on October 26, 2021, Defendants executed a promissory note (the "Note") in the original principal amount of $105,202.50 in connection with that financing. (Compl. ¶ 25.)

The Franchise Agreement required Sisara to operate the store in compliance with 7-Eleven's foodservice standards and all applicable laws, regulations, and codes. (Compl. ¶ 30.) Over some months, 7-Eleven sent notices to Sisara based on several alleged violations of those standards and regulations. On September 11, 2023, 7-Eleven issued a Notice of Material Breach[3] to Sisara for its failure to comply with 7-Eleven's standards of cleanliness and foodservice. (Compl. ¶ 32a.) In that Notice, 7-Eleven described conditions observed at the Store on August 9, 2023, including the presence of "trash scattered in the landscaped areas and parking lot, dirty floors, dirty equipment, and out of code/uncoded hot food and milk products, among other violations." (*Id.*) Also on September 11, 7-Eleven issued a Notice of Material Breach to Sisara for other violations observed on August 4, including its failure to

---

[3] Under the Franchise Agreement, 7-Eleven was empowered to issue a "Notice of Material Breach" whenever it determined that Sisara was not complying with the terms of the Franchise Agreement. In return, Sisara was obligated to rectify the alleged breach or face termination of the Franchise Agreement at 7-Eleven's request.

comply with 7-Eleven's foodservice standards by "among other things, offering items for sale or use that were past their code dates or having items that lacked code dates," such items including "condiments, meatballs, milk, cream, and hot food items." (Compl. ¶ 32b.) On April 1, 2024, 7-Eleven issued another Notice of Material Breach to Sisara based on its failure to comply with foodservice standards, as observed on February 9, 2024, including "offering items for sale or use that were past their code dates or having items that lacked code dates," such as "pizzas, chicken wings, and other hot food products." (Compl. ¶ 32c.) But these food safety violations were not all.

7-Eleven also sent Sisara three notices based on alleged violations of its financial obligations. As part of the Franchise Agreement, Sisara was obligated to maintain a net worth of $10,000. But on April 1, 2024, 7-Eleven issued a Notice of Material Breach to Sisara citing its failure to comply with the "$10,000 Minimum Net Worth obligation as of February 29, 2024, at which time the Store's Net Worth was (negative) -$14,778.84." (Compl. ¶ 34a.) On April 23, 7-Eleven issued a second Notice of Material Breach for failure to comply with the minimum net worth "as of March 31, 2024, at which time the Store's Net Worth was (negative) -$24,106.69." (Compl. ¶ 34b.) On June 21, 7-Eleven issued a third Notice of Material Breach to Sisara citing its failure to comply with the minimum net worth as of May 31, 2024, "at which time the Store's Net Worth was (negative) -$32,096.92." (Compl. ¶ 34c.) Each Notice allowed Sisara seven calendar days to cure the violation. (Compl. ¶ 35.)

On July 7, 2024, 7-Eleven delivered a Notice of Termination of the Franchise Agreement to Sisara. (Compl. ¶ 37.) This Notice of Termination was based on Sisara's failure to cure the final June 21 Notice of Material Breach for violation of its financial obligations

concerning the minimum net worth of the Store. (*Id.*) The termination was to take effect on July 9, 2024, at 7:00 a.m. (*Id.*) On July 9, 7-Eleven gave Sisara an additional Notice of Termination stating that it was also terminating the Franchise Agreement based on repeated violations of the Franchise Agreement's terms resulting in seven total breach notices since September 2023.[4] (Compl. ¶ 38.) In the Notices of Termination, 7-Eleven "declared the sublease of the Store premises and lease of the Store's equipment terminated and demanded that Sisara LLC comply with the post-termination obligations of the Franchise Agreement, including by surrendering the Store premises, equipment, and inventory to 7-Eleven." (Compl. ¶ 39.)

Notwithstanding the Notices and 7-Eleven's demands for possession of the Store and its equipment, Defendants refused to surrender the Store, continued to operate the Store as a convenience store business, and "falsely [held] the Store out to the consuming public as an authorized and duly licensed 7-Eleven store." (Compl. ¶ 41.)

## II. PROCEDURAL BACKGROUND

7-Eleven filed its Complaint against Defendants on July 14, 2024. (*See* ECF No. 1.) Sisara was served the summons and Complaint on July 19, 2024. (ECF No. 8.) Accordingly, its responsive pleadings were due August 9, 2024. *See* Fed. R. Civ. P. 12(a)(1)(A)(i). Sisara did not file a responsive pleading and has not responded to the Complaint in any manner.[5] On

---

[4] In addition to three Notices of Material Breach regarding violations of food and safety standards and three Notices regarding violations of financial obligations, 7-Eleven also issued a Notice of Material Breach to Sisara on April 23, 2024, based on its alleged violation of law; to wit, selling tobacco products to a minor on June 13, 2023, and January 31, 2024. (*See* Compl. ¶ 33.)

[5] On July 31, 2024, 7-Eleven filed a Notice regarding "Defendants' Letters." (ECF No. 13.) In that Notice, 7-Eleven informed the court that it had received two letters from Defendants—one dated July 21 and received on July 29, and another dated July 23 and received on July 30. (*See* ECF No. 13.) Neither of these letters was

July 17, 2024, 7-Eleven filed a motion for a preliminary injunction. (ECF No. 6.) During the hearing on that motion held on September 5, 2024, 7-Eleven moved for an entry of default against Sisara (ECF No. 28), which the clerk granted (ECF No. 29).

On September 6, 2024, the court entered a preliminary injunction against Defendants, ordering them to, among other things, cease using or infringing upon 7-Eleven's trademarks and surrender possession of the store to 7-Eleven. (*See* ECF No. 30.) Defendants complied with that Order. On May 23, 2025, 7-Eleven filed the instant motion for default judgment against Defendants. (Mot. for Default J.) In that motion, 7-Eleven sought a permanent injunction against Defendants' trademark infringement and unfair competition, possession of the store premises, and damages in the amount of $54,157.40 against all Defendants, and damages in the amount of $129,515.42 against Sisara and Ram Lamichhane.[6] (*Id.*) On June 24, 2025, based on a suggestion of bankruptcy filed by 7-Eleven, the court stayed all proceedings against Ram and Sanu Lamichhane pending resolution of their bankruptcy case, but did not enter a stay as to Sisara. (ECF No. 38.) Accordingly, the motion for default judgment against Sisara is ripe for decision.

---

filed with or otherwise sent to the court by Defendants. In these letters (attached to 7-Eleven's Notice as Exhibits A and B), Defendants essentially asked 7-Eleven to reconsider their lawsuit against them and requested that the court appoint them a lawyer and interpreter. On August 6, the court issued an Order informing Defendants of their obligation to file a response to the Complaint *with the court* and ordering them to do so within 7 days. (ECF No. 17.) That Order also informed Defendants that Sisara could not appear in court without counsel and ordered them to retain counsel and file a responsive pleading by September 5, 2024. (*Id.*) On August 12, 2024, Defendants filed a letter-motion with the court, but that letter simply requested that the court provide them with a government-appointed attorney and interpreter during the hearing. (*See* ECF No. 19.) On August 21, the court denied Defendants' motion for court-appointed counsel. (ECF No. 20.) In that Order, the court again reminded Defendants of their obligations to file responsive pleadings and retain counsel or risk default. No other responsive pleading or motion was ever filed by Defendants.

[6] The Motion for Default Judgment did not include a request for attorneys' fees and costs.

### III. STANDARD OF REVIEW

The Fourth Circuit has "repeatedly expressed a strong preference that . . . claims . . . be disposed of on their merits." *Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 417 (4th Cir. 2010); *see also United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982) ("[T]he clear policy of the Rules is to encourage dispositions of claims on their merits . . . ."). But when a "properly served defendant . . . fails to plead or otherwise defend against the allegations in [a] complaint," the court is authorized to enter default judgment against that defendant under Federal Rule of Civil Procedure 55(b)(2). *Reynolds Innovations, Inc. v. E-CigaretteDirect, LLC*, 851 F. Supp. 2d 961, 962 (M.D.N.C. 2012). "To obtain a default judgment, a party must first seek an entry of default under Federal Rule of Civil Procedure 55(a)." *Pelyn Tr. v. Fair Exch. Tr.*, No. 3:08-cv-287, 2009 WL 2912521, at *1 (W.D.N.C. Sept. 3, 2009) (internal quotation omitted).

After the clerk enters default, the court must determine if the complaint sets forth a legitimate cause of action, accepting the well-pleaded allegations of fact as true. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). When determining liability, the court's inquiry is "whether or not the face of the pleadings supports the default judgment and the causes of action therein." *Fin. Pac. Leasing, Inc. v. Moess Trucking, LLC*, No. 3:20CV00066, 2021 WL 279608, at *1 (W.D. Va. Jan. 27, 2021). Claims for damages, however, are not simply accepted as true. *See Lopez v. XTEL Constr. Grp., LLC*, Civ. No. PWG-08-1579, 2011 WL 6330053, at *4 (D. Md. Dec. 16, 2011). Instead, the plaintiff must establish its damages by way of an evidentiary hearing or submitting supporting evidence to the court. *Id.* (collecting cases). At bottom, the award of a default judgment is subject to the district court's discretion; it is not

a matter of right. *See, e.g.*, *Leighton v. Homesite Ins. Co. of the Midwest*, 580 F.Supp.3d 330, 332 (E.D. Va. 2022).

## IV.  ANALYSIS

### A. Liability

7-Eleven contends that, under the default-judgment standard, the Complaint supports a judgment in favor of 7-Eleven and against Sisara on Count I (Breach of Contract—Post-termination Obligations), Count II (Breach of Contract—Damages), Count III (Trademark Infringement), Count V (Unfair Competition), and Count IX (Breach of Promissory Note).[7] The court agrees on all counts.

#### 1. Count I (Breach of Contract—Post-termination Obligations) & Count II (Breach of Contract—Damages)

Texas law governs the enforcement of the Franchise Agreement in this case. (*See* Franchise Agreement at § 30(a) [ECF No. 1-1].) "In Texas, the essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l., Inc. v. Eagle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007).

First, 7-Eleven and Sisara entered into a valid, written contract under the Franchise Agreement. (*See* Compl. ¶ 23; ECF No. 1-1 ["F.A."].) On August 13, 2021, Ram Lamichhane, on behalf of Sisara, signed the "Completed Agreement Acknowledgement" and all other

---

[7] In its Motion for Default Judgement, 7-Eleven abandoned Count IV (Trademark Dilution), Count VI (Unlawful Detainer), and Count VII (Common Law Detinue) as "moot or duplicative of other claims." (Mot. for Default J. at 3 n.1.) Accordingly, the court will not consider those claims any further.

attendant documents, thereby entering into the Franchise Agreement with 7-Eleven. (*See, e.g.*, F.A. at 2.)

Second, 7-Eleven performed its obligations under the Franchise Agreement by leasing the Store's premises to Sisara and financing Sisara's purchase of inventory for the Store. (*See* Compl. ¶¶ 23, 27, 29, 47.)

Third, Sisara breached the Franchise Agreement by failing to pay the Open Account balance[8] and failing to comply with its post-termination obligations under the Agreement. Under the Franchise Agreement, upon termination of the Agreement, Sisara agreed to the following post-termination obligations:

> (1) Immediately and without any further notice . . . peaceably surrender the Store and 7-Eleven Equipment . . .;
> (2) Transfer to [7-Eleven] . . . the Final Inventory of the Store. . . .;
> (3) Transfer to [7-Eleven] the Receipts, Cash Register Fund, prepaid Operating Expenses, money order blanks, bank drafts, lottery tickets (if applicable) and Store supplies;
> (4) Immediately cease using the Service Mark, the Related Trademarks, and all elements of the 7-Eleven System, including the Confidential Information and Trade Secrets;
> (5) Return to [7-Eleven] any copy of the Trade Secrets and Confidential Information . . .;
> (6) Execute all necessary documentation to transfer all licenses and permits relating to the Store to [7-Eleven]; and
> (7) Comply with all other post-expiration/termination obligations set forth in this Agreement.

---

[8] The Open Account—described further in § IV.B *infra*—contains the full accounting of credits and debits made between 7-Eleven and Sisara in financing the Store. The balance represents the total amount owed by Sisara to 7-Eleven.

(F.A. at 39.) Additionally, upon termination of the Franchise Agreement, the parties agreed that "any unpaid balance on the Open Account will be immediately due and payable upon demand by [7-Eleven]." (F.A. at 40.)

On July 7, 2024, 7-Eleven notified Sisara that it was terminating the Franchise Agreement effective July 9. (*See* Compl. ¶ 37; Notice of Termination [ECF No. 1-4].) After the post-termination obligations had been triggered on July 9, Sisara refused to surrender the Store, equipment, or inventory and continued to use 7-Eleven's marks, all in violation of the Franchise Agreement's terms. (*See* Compl. ¶ 41.) Moreover, Sisara failed to pay the Open Account financing balance, which was due and payable after termination. (*See id.* ¶¶ 55, 56.)

Fourth, Sisara's breach of the Franchise Agreement harmed 7-Eleven. As discussed further below, 7-Eleven has been damaged by Sisara's refusal to surrender the Store and its equipment and has been irreparably harmed by Sisara's infringement of 7-Eleven's trademarks after its license expired upon termination of the Franchise Agreement. Furthermore, 7-Eleven is entitled to monetary damages based on Sisara's breach of the Franchise Agreement, including its failure to pay the balance on the Open Account. Therefore, the court finds that 7-Eleven has established its breach of contract claims and will enter default judgment against Sisara on Counts I and II.

**2. Count III (Trademark Infringement) & Count V (Unfair Competition)**

To prevail on a trademark-infringement claim under the Lanham Act, a plaintiff must prove: "(1) that it possesses a mark; (2) that the [Defendants] used the mark; (3) that the [Defendants'] use of the mark occurred 'in commerce'; (4) that the [Defendants] used the mark 'in connection with the sale, offering for sale, distribution, or advertising' of goods or services;

and (5) that the [Defendants] used the mark in a manner likely to confuse consumers." *Lamparello v. Falwell*, 420 F.3d 309, 313 (4th Cir. 2005); *see* 15 U.S.C. § 1114. In a trademark-infringement claim, the central question is typically "whether there exists a 'likelihood that an appreciable number of ordinarily prudent purchasers will be misled, or indeed simply confused, as to the source of the goods in question.'" *Perini Corp. v. Perini Const., Inc.*, 915 F.2d 121, 127 (4th Cir. 1990) (cleaned up).

In the case of a "holdover franchisee"—*i.e.*, a franchisee whose trademark license has been terminated—many courts have found that the continued use of the franchisor's trademark is especially likely to cause confusion, and proof of such use almost presumptively constitutes trademark infringement. *See Choice Hotels Int'l, Inc. v. A Royal Touch Hosp., LLC*, 409 F. Supp. 3d 559, 566 (W.D. Va. 2019) (collecting cases); *Allegra Network, LLC v. Reeder*, No. 1:09-cv-912, 2009 WL 3734288, at *2 (E.D. Va. Nov. 4, 2009) ("Courts have held that there is a high risk of consumer confusion when a former franchisee continues to operate under the franchisor's trademarks because customers will continue to associate the former franchisee with the franchisor."); *Emerson Creek Pottery, Inc. v. Emerson Creek Events, Inc.*, No. 6:20-cv-54, 2022 WL 426592, at *5 (W.D. Va. Feb. 11, 2022) ("[W]here a licensor grants a licensee a license to use a mark, and then the licensor revokes the license (or it otherwise terminates), and the prior licensee continues to use the mark, the prior licensee infringes the licensor's mark."); *Makina ve Kimya Endustrisis A.S. v. Kaya*, No. 3:20-cv-00072, 2023 WL 6540200, at *7 (W.D. Va. Oct. 6, 2023) ("Some courts have held that a holdover licensee's continued, unauthorized use of an original trademark after the license to use the trademark has been terminated is sufficient to establish a likelihood of confusion.").

In this case, 7-Eleven is the legal owner of several registered trademarks that are unique and clearly recognizable throughout the United States, including in the Commonwealth of Virginia. (*See* Compl. ¶¶ 13–19.) As set forth in the Complaint, 7-Eleven entered into a Franchise Agreement with Sisara in 2021, which included the use of its trademarks. (*Id.* ¶ 23.) 7-Eleven terminated the Franchise Agreement on July 9, 2024, but Sisara continued to use 7-Eleven's trademarks and held out their convenience store to the public as an official 7-Eleven franchise. (*See* Compl. ¶¶ 37, 41.) There can be no doubt, then, that Sisara "used" the marks "in commerce" and "in connection" with the sale of goods. Further, it is clear that an "ordinarily prudent" consumer would be confused by the continued operation of the Store as a 7-Eleven brand. On July 8, the Store was licensed and consumers were purchasing 7-Eleven goods. But as of July 9, the Store was no longer licensed, yet it continued to operate (by all appearances) as a normal 7-Eleven store just as it did the day before, giving the ordinary consumer no way of knowing these goods were suddenly no longer authorized. (*See* Compl. ¶ 44.) Therefore, the court has little trouble finding that the Complaint establishes claims for trademark infringement.

7-Eleven also brings a claim of unfair competition under Section 43(a) of the Lanham Act. Federal trademark infringement and unfair competition are "measured by identical standards," *Choice Hotels Int'l, Inc.*, 409 F. Supp. 3d at 568, and a plaintiff bringing an unfair competition claim must principally allege that a defendant's use of its valid trademark is likely to cause confusion among consumers, *see Harrell v. Colonial Holdings, Inc.*, 923 F. Supp. 2d 813, 820 (E.D. Va. 2013). Because the same facts that support a claim of trademark infringement would also establish a claim for unfair competition, the court likewise finds that the Complaint

establishes a claim for unfair competition. Accordingly, the court will enter default judgment against Sisara on Counts III and V.

### 3. Count IX (Breach of Promissory Note)

On October 26, 2021, Sisara and its co-defendants executed and delivered a promissory note to 7-Eleven in the principal amount of $105,202.50. (*See* Compl. Ex. B [ECF No. 1-2].) 7-Eleven properly owns and holds the Note. (Compl. ¶ 90.) By its express terms, the Note states that it "may be declared immediately due and payable, without need for notice or demand of any type, if (i) the [Franchise] Agreement is terminated, . . . [or] (iv) if you default in the performance of any obligation due under the Agreement . . . ." (Compl. Ex. B at 1.) Therefore, once 7-Eleven terminated the Franchise Agreement, the Note became immediately due and payable on July 9, 2024. (*See* Compl. ¶ 91.) As alleged in the Complaint, Sisara failed to pay the outstanding balance of the Note after it became due and payable. (*Id.* ¶ 92.) Accordingly, the court finds that Sisara has breached the terms of the Note, and judgment will be entered in favor of 7-Eleven on Count IX.

## B. Damages

Next, the court must determine the damages that 7-Eleven is entitled to recover. *See Lopez*, 2011 WL 6330053, at *4. "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). In its Complaint, 7-Eleven requests "damages [that] 7-Eleven has sustained by reason of Sisara LLC['s] . . . breaches of the Franchise Agreement and . . . failure to pay the Note," and "such other and further relief as this Court deems just and proper." (Compl. ¶¶ J–K, M.)

As an initial matter, while 7-Eleven originally requested damages related to its trademark infringement claims in its Complaint (*see* Compl. ¶¶ E–G), in its motion for default judgment, 7-Eleven explicitly states that it "is foregoing its rights to recover Defendants' profits and 7-Eleven's damages under 15 U.S.C. § 1117" and only seeks permanent injunctive relief related to the trademark infringement (Count IV) and unfair competition (Count V) claims. (Mot. Def. J. at 7 n.4.) Accordingly, the court will only consider damages related to the breach of contract and breach of the promissory note claims.

In support of the damages associated with the breach of the Note and the Franchise Agreement, 7-Eleven filed two declarations from Tammy Haney, the Manager for Franchise Accounting for 7-Eleven, accompanied by extensive business records and financial summaries.[9] (*See* Decl. of Tammy Haney ¶ 1, May 23, 2025 ("First Decl.") [ECF No. 36-1]; Supp. Decl. of Tammy Haney ¶ 1, Aug. 1, 2025 ("Supp. Decl.") [ECF No. 43].) Based on this evidence, the court will examine each claim for damages in turn.

First, by executing the Note, Sisara agreed to pay the original principal balance of $150,202.50 with a fixed annual interest rate of 7.75% on a 60-month installment plan in the amount of $2,120.56 per month. (Compl. Ex. B; Supp. Decl. ¶ 19.) Ms. Haney attested that between January 2022 and September 2024, Sisara made 32 installment payments of principal and interest toward the balance of the Note. (*See* Supp. Decl. ¶¶ 22, 31; Exhibit F [ECF No. 43-6]; First Decl. ¶ 19.) Along with the declarations, 7-Eleven submitted evidence, including business records of financial summaries, to substantiate that record of payments. (*See* Exhibit

---

[9] 7-Eleven filed a supplemental declaration on August 1, 2025, after the July 16 Order from this court requesting additional documentary evidence supporting 7-Eleven's claims for damages.

C [ECF No. 43-3]; Exhibit D [ECF No. 43-4]; Exhibit E [ECF No. 43-5]; Exhibit G [ECF No. 43-7].) When Sisara surrendered the Store in September 2024, the Note was accelerated and the balance became immediately due and payable. (*See* Compl. Ex. B. at 1; Supp. Decl. ¶ 31.) In total, as of September 2024, Sisara paid $51,045.10 on the Note to 7-Eleven, leaving a principal balance of $54,157.40 remaining. (First Decl. ¶ 19; Supp. Decl. ¶ 31; *see* Exhibit G at 196.) Accordingly, the court will award 7-Eleven damages in the amount of **$54,157.40** for Sisara's breach of the Note.

Second, damages on the breach-of-contract claim are established by the amount owed by Sisara on the Open Account at the time the Franchise Agreement terminated and it failed to pay. The unpaid balance of the Store's Open Account was calculated by 7-Eleven during the financial wind-down following the repossession and closure of the Store in September 2024. (*See* Supp. Decl. ¶¶10–12.) According to 7-Eleven's submitted declaration, the Open Account balance represents the amount owed by Sisara, based on a running account of the credit and financing extended by 7-Eleven to Sisara used to pay for operating expenses such as payroll and inventory. (*See id.* ¶ 11.) As of September 2024—and substantiated by 7-Eleven's evidence, including financial summaries and monthly accountings—the Open Account debit balance (amount owed to 7-Eleven) was $183,772.47. (*See* Exhibit G; Exhibit H [ECF No. 43-8]; Exhibit I [ECF No. 43-9]; Supp. Decl. ¶¶ 29–30.) As part of the Final Settlement Statement, 7-Eleven made a final adjustment of a $100 credit to the Open Account, bringing the final balance to $183,672.47. (Supp. Decl. ¶ 32; Exhibit J [ECF No. 43-10].) Adjusting for the $54,157.40 owed on the Note—which is included in the Open Account balance—the adjusted total owed on the Open Account from unpaid debits is $129,515.42. Accordingly, the court

will award 7-Eleven damages in the amount of **$129,515.42** for Sisara's breach of the Franchise Agreement.

## C. Permanent Injunction

Finally, 7-Eleven seeks a permanent injunction against Sisara to enjoin any further trademark infringement, unfair competition, and unlawful possession of the Store. A plaintiff seeking permanent injunctive relief must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant[s], a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156–57 (2010) (internal citation omitted). Whether to grant an injunction is a decision within the court's equitable discretion. *Hum. Rts. Def. Ctr. v. Sw. Va. Reg'l Jail Auth.*, 448 F. Supp. 3d 581, 585 (W.D. Va. 2020). Based on the facts presented, the court finds that a permanent injunction is warranted.

First, there is "a rebuttable presumption of irreparable harm upon a finding of a violation" of 15 U.S.C. § 1125(a) or a violation of "any right of the registrant" of a trademark. 15 U.S.C. § 1116(a); *see also Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 273 (4th Cir. 2022) ("[A] presumption of irreparable injury is generally applied once the plaintiff has demonstrated a likelihood of confusion."). Given that the court has found that Sisara violated 7-Eleven's trademark rights—and that it has failed to respond or rebut that conclusion—the presumption carries. Notwithstanding the presumption, the court also finds that, on the facts of this case, 7-Eleven has been irreparably harmed through the loss of a unique piece of real property in

the Store, *see 7-Eleven, Inc. v. Khan*, 977 F. Supp. 2d 214, 234 (E.D.N.Y. 2013), and the loss of its ability to control its marks through its selling of goods and, as a result, control any damage to its business reputation and good will stemming from the unauthorized sales, *Allegra Network LLC*, 2009 WL 3734288, at *3. Accordingly, 7-Eleven has satisfied the first factor.

Second, the court finds that monetary damages are inadequate to compensate for the loss of unique real property in the Store, *see Khan*, 977 F. Supp. 2d at 234, and for the inherent injury to the goodwill and reputation of 7-Eleven's business through the unlawful use of its trademarks by Sisara, *see Allegra Network LLC*, 2009 WL 3734288, at *3.

Third, there is no indication that a permanent injunction would result in any hardship to Sisara, which has already been complying with a preliminary injunction for almost a year. *Cf. Hum. Rts. Def. Ctr.*, 448 F. Supp. 3d at 585. Moreover, the risk to 7-Eleven's intellectual property and its trademarks is great when the absence of an injunction could allow the uncontrolled use of its marks in the marketplace. *See Choice Hotels Int'l, Inc.*, 409 F. Supp. 3d at 569. Accordingly, the balance of the hardships clearly favors 7-Eleven and the award of an injunction.

Fourth, the public interest would be served by a permanent injunction. Thematic of trademark law, "the public interest is served by protecting the integrity of [an owner's] marks and preventing potential consumer confusion in the marketplace." *Id.* at 569. Therefore, 7-Eleven's claims warrant injunctive relief, and the court will enter a permanent injunction preventing Sisara from using 7-Eleven's trademarks and awarding it permanent possession of the Store.

## V.     CONCLUSION

For the foregoing reasons, 7-Eleven's motion for default judgment (ECF No. 36) will be granted as to Defendant Sisara, LLC. 7-Eleven is entitled to permanent injunctive relief and damages in the total amount of $183,672.82.

The clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to the parties and all counsel of record.

**ENTERED** this 26th day of August, 2025.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE